Our next appeal for argument is DACA number 23-2189, BillJCo, LLC v. Apple Inc. Mr. Quote. May it please the court. The claims that are at issue relate to basically the handset or the mobile device that a person might be carrying. And admittedly the claims are long. Difficult to read. A little bit, yeah. Only a patent drafter's mother could love claims like this. Certainly not a judge. Well, I will take no responsibility for that. But to give some context to what we're talking about, because the context of the inventions is location-based exchanges of information. And as the patent teaches early on, one of the issues is data security and data privacy. And so you want to ensure that the information you're getting is legitimate and from someone that you actually wanted to receive the data from. And so what we have is a – you can imagine – and nowadays it's commonplace for apps on your phone. And as you install an app, it will ask you certain questions like, do you want to receive notifications? Do you want to enable location – like the GPS? Do you want to allow the app to access your contacts or your photographs and things like that? Those are all permissions or privileges. And in the patent, in the 267 as well as the 868 specifications, it's specifically stated that permissions and privileges are – those two terms are used interchangeably. Well, let me ask you, just to put this in terms that maybe I can understand, the way this works is in the real world. I'm walking down the street, and you see Bobby Vann's restaurant is over here on 15th Street. I have this app on my phone, and I have my phone with me, and I'm walking by Bobby Vann's. And because I'm walking by Bobby Vann's, I get a communication that comes in on my phone saying, oh, we have this promotion. You come in between 12 and 12.30, you'll get a free cup of soup. Is that what we're talking about here? Largely, but there's the additional factor that you have already loaded onto your mobile device the Bobby Vann's application and said – and granted certain rights to Bobby Vann's. And set this up. You set this up. I'm sitting there with my phone. I go to Bobby Vann's app, and I say – I go to them and I say, put me on your system, right? Yes, exactly. And if I have another restaurant, whether it's Devin and Blakely next door, I go to them and say, put me on your system, right? If you want to load up – I don't know, Devin and something. They're right next to Bobby Vann's. I say this only because I walk by them. But yes, that's correct. It is an app that you have set up and configured on your device. And it's back to the whole am I getting information from who I have arranged to get that information. And that is by configuring those permissions. But I set up these permissions or these arrangements, if you will, to use a neutral word here because I realize there's an issue about permission and privilege. But if I set up one of these arrangements, I have to go to each individual restaurant. I don't go to some cloud or app in the sky, right? It would be specific to a particular – I have to set it up with each individual establishment. Correct, but it could be a chain, for example. I understand that, but I have to go to the chain or the individual restaurant. Sure. Okay. Sure. And so, as Judge Schall, you've kind of touched on, the question that – the main question is whether a preference, which is what's disclosed in Haberman, can be a – is a privilege or a permission. And the art that we're talking about is obviously computer science related. And in the computer science arts, privileges and permissions have well-understood meaning. And it is a granted right or authority for your device to do something, and it's between two parties. Can I ask you something? Certainly. If we defined permissions as including privileges but not including preferences, would the not including preferences be a negative limitation? I would think it would be. I don't know if it's a negative limitation more so. Well, isn't when you construe something and you say it includes everything or it includes this except not this, that's a negative limitation? And my question is, I read our case law as saying for a negative limitation, it has to be clear and unequivocal from the specification or some other source of intrinsic evidence that when you are saying in a claim construction, it doesn't include something. It's got to be clear and unequivocal. Am I right about that? You are correct. So the way I would phrase it differently is that when you're talking about privileges or permissions, we're trying to determine what those terms mean. And then you look at the prior art and what's disclosed in the prior art and whether the prior art fits that definition. That's right. And that second step is a question of fact. Correct. But there are no disputed facts here in that Haberman never uses the word privilege, never uses the word permissions, doesn't talk about granting a right between entities. But don't we, don't we, I mean I hear you. I hear what you're saying. To me, the concern I have about your argument is that you seem to want me to like have a strict understanding of what a preference is, setting aside what Haberman says about what it's using the word preference to mean. And I think we, you know, it's better to look at the prior art, in this case Haberman, and say does it disclose the concept that falls within the definition of permissions and privileges as set forth in the patent suit, right? I mean that's, you have to first construe the claim. And then you're not, while you've got a point that, you know, that is part of the evidence that would support your side of the argument. But we also have to look at what else the prior art reference says and whether even if it uses the word preferences, if it's in the context of that, what it's describing is something that in fact falls within the penumbra of what you're saying is a permission. Yes, Your Honor, I understand your point. And so what Haberman actually does is instead of just talking about preferences as a general concept, they actually explain what they mean by preferences. And I'm referring to Appendix 2401, Paragraph 25. And there they say, the method includes the steps of storing a preferences profile from a person using the mobile devices, wherein a preferences profile represents the types of informational content with which the person using the mobile device desires to be presented. So they've explained expressly what they mean by preferences, which is consistent with the plain and normal meaning I think of preferences as just something I like over something else. And so conceptually, that's fine. That's exactly what Haberman discloses, that I want to set my phone or my mobile device, whatever it might be, so that if I want coffee, if I'm interested in receiving information about coffee shops, that's how I set up my phone. But it's not set up so that, as Judge Schall indicated earlier, where you sign up for a particular store or supplier or whatever it might be. There hasn't been that back and forth. That happens. And to tie it back into the claims themselves, in both the 267 and the 868, they're recited in different ways. But in the 267, there's a limitation searching by the mobile data processing system, the privilege data stored local to the mobile data processing system for matching privilege upon the receiving. And then it talks about the matching privilege being configured to relate the originating identity of the whereabouts data with the destination identity. And this relating of the originating data, the originating data would be the restaurant. I forgot the names of the restaurants you mentioned. And then the destination identity would relate to the application that I just put on my phone for that particular restaurant. And then in the 868 patent, conceptually it's described in a different way where you have a first identifier, second identifier, third identifier, and there's a matching of some of those identifiers to say, okay, that's data from someone that I had wanted to receive data. What is your response to the board's reliance on the specification, specifically at, I think it's JA406, column 124, lines 15 to 24? I'm sorry, your honor? It's that very broad definition of privileges. Column 124. Column 124, lines 15 to 24, where it says, privileges are any configurable privilege granted by one entity to another entity that can limit, enable, disable, delegate, or govern actions, features, functionality, behaviors. And that's pretty darn broad. Well, but it's broad in the sense that it can be any configurable privilege, but it still is a privilege. It's not talking about anything. It's still talking about something that is granted from one identity to another. And admittedly, this specification is rather long, but there is one instance in which the specification talks about and differentiates preferences from privileges. There's one sentence. There's one sentence. And they list them. I mean, you're just saying because it makes a list. In your view, that means that a preference can never be a privilege. That they are different things, yes. Correct. If you have any other questions. No, you're ending the rebuttal. Do you want to reserve it? Yes. Okay. All right. Is it Mr. Post? Yes, sir.  May it please the court. I'd like to start where counsel's argument ended in terms of the way in which the 267 patent describes privileges. And in particular, the sentence in the specification, and this is at column two, lines 45 through 48, and that's appendix page 345, where preferences and permissions are included amongst a list of conceivable user configurations. And these are descriptions of things that can be used to accomplish the control that the privileges in the 267 patent are described as doing. And I will say that in the context of this sentence, which is, again, an open-ended list, it concludes with and other. So it isn't intended to mean these are the only types of things that could accomplish the privileged control. This is column two on 345? That's correct, Your Honor. Okay. And we're at what line? Lines 45 through 48. Okay. Thank you. The sentence beginning with users' preferences, that's the sentence I'm referring to. So these are examples. They are not exclusive. And they certainly aren't the type of clear and unequivocal language in the specification that would support a negative limitation like Bill Jaco is advocating. Because their proposal regarding all of these privileged terms, which is essentially the only dispute that Bill Jaco raises with respect to the Board's determinations, is that privileges cannot include anything that is really labeled a preference, irrespective of what the preference in the example of Haberman actually accomplishes. And it is clear from Haberman's disclosure, and I'll direct the Court to additional disclosure in Haberman in particular, paragraph 181, and that's at appendix pages 24, 13 to 14. That's an example in Haberman of these preference profiles being used to affirmatively control whether or not something is presented to the user. And that's precisely what the 267 patents privileges do. This isn't the sort of colloquial definition of a privilege or a preference where, you know, I might have a preference in a hotel of a high floor and a room away from the elevator. But when I check in at midnight, that's not available. I'm still going to get a room, but it's maybe on floor two. I'm not going to be sent back outside of the hotel. The preference of Haberman is not that. It is, in contrast, something that says, is this message from Bobby Vance going to be presented or not? And it's not an optional thing. It is precisely within the scope of the- I'm sorry. I heard a opposing counsel trying to make a distinction between identities versus information content. And in his view, privilege is about identity to identity and, you know, which identities are approved for transmitting information and having that information displayed. Whereas Haberman is not so much about approving or otherwise blocking identities or parties, but instead about approving content and thereby blocking other content. And so, therefore, there's not quite a true match between whatever Haberman is disclosing about its approval mechanism and what is being claimed in terms of approval. So what Haberman describes is that within this preference profile, the user can give certain instructions and store those instructions, and this is as the board found in its final written decision, that control how the system operates. And there are, beyond the initial privilege terms, other claim terms, destination identity being one of them. During the proceedings, Bill Jacob conceded that the destination identity arguments are the same as the privilege, not equal to preferences argument. But what Haberman does describe is that the information about the broadcast, so what the broadcast system is, the author, these identifiers are checked as part of the Haberman system. And this was included in the board's final written decision, including an appendix, page 11, that this was within the scope of Haberman, of its system, that these were the precisely types of things that a user could configure using the user interface. And that's what came up in the context of the 868 patent, to control the presentation of information in an affirmative or negative way. There are, just to be clear so that it's not lost in the record, there are two patents at issue in a consolidated appeal. The claim language is different. The arguments, however, regarding disclosure in Haberman, and in the case of the 868, the disclosure of Bossier, aren't disputed. The dispute is around that privilege claim construction and the attempt to narrowly limit it using a negative construction. And unless there are any further questions, we'd ask that the board's determination of obviousness be affirmed as to both sets of asserted claims. Okay. Thank you. Your Honors, I have a couple points, but I just wanted to see if you had any questions before addressing those. Okay. Council had actually said something that was interesting, and the board talked about how the preferences in Haberman control how the device works. And he said, therefore, it's a privilege. But if we could turn back to the list of potential configurable user features or characteristics from APX 345, column 2, line 45-ish, those are all configurable things, and those are all characteristics that you can use to control the device. So merely because it's something that can be used to control the device does not make it a privilege. And it is indeed a non-exhaustive list, but at the end of the day, the list is intended to differentiate different types of user configurations. And kind of circling back to Judge Chen's point about the identity versus the content, and that's exactly right, that is our point. At the end of the day, you might be able to control the type of information that is delivered, but it's done in a different way using different parameters. So unless you have anything further. Okay. Thank you very much.  Case is submitted.